IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| REVEREND JOY MELINDA BAILEY, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | No. CIV-09-470-L |
| LIBERTY LIFE ASSURANCE COMPANY OF BOSTON, et al., | ) ) ) ) | |
| Defendants. | ) | |

# **O R D E R**

This action arises out of the termination of plaintiff's disability insurance benefits. The benefits were provided pursuant to a self-funded plan issued by defendant Board of Pensions of the Presbyterian Church (U.S.A.) ("Board"). From April 1, 2005 to March 31, 2008, defendant Aetna Life Insurance Company ("Aetna") served as the third-party administrator of the plan. This matter is before the court on Aetna's motion for summary judgment. Summary judgment is appropriate if the pleadings, affidavits, and depositions "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Any doubt as to the existence of a genuine issue of material fact must be resolved against the party seeking summary judgment. In addition, the inferences drawn from the facts presented must be construed in the light most favorable to the nonmoving party. Board of Education v. Pico, 457 U.S. 853, 863 (1982). Nonetheless, a party opposing a motion for summary judgment may not

simply allege that there are disputed issues of fact; rather, the party must "set out *specific* facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2) (emphasis added).  *See also*, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).  In addition, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The undisputed facts establish that plaintiff, who was a member of the plan, claimed to be disabled from her work as a minister due to profound hearing loss. She began receiving disability benefits under the plan as of January 1, 2005.  The terms of the plan dictate that benefits would continue "as long as a Member remains Disabled".  Exhibit 2-1 to Defendant Aetna Life Insurance Company's Motion for Summary Judgment and Brief in Support at ¶ 11.3 [hereinafter cited as "Aetna's Motion"]. The definition of disabled changes depending on the time period at issue. The plan provides:

> DISABILITY (OR DISABLED). The inability of a Member due to sickness or bodily injury to perform substantially all of the material duties of his or her regular work or any other type of work that would afford a reasonably comparable level of income and after a period of twenty-four (24) consecutive months of such disability, the inability of a Member due to sickness or bodily injury to perform any type of work for which he or she is fitted by education, training or experience, all of which conditions must be certified by the Board's medical counsel.

Id. at ¶ 2.1(h).

Three months after plaintiff began receiving disability benefits, Aetna became the third-party administrator for the plan.[1] Under the terms of the Service Agreement with the Board, Aetna was to review claims for benefits, determine eligibility, provide on-going assessment of a member's disability, and conduct the initial appeal from adverse determinations. Exhibit 2-2 to Aetna's Motion at 16-17. Aetna did not underwrite the plan's disability coverage, nor did it issue any insurance policy for disability coverage or bear any risk of loss based on disability claims. The Service Agreement specifically provided that the fees paid to Aetna "shall not be contingent upon the savings obtained in the adjustment, settlement, or payment of losses." Id. at 21.

On October 13, 2006, Aetna notified plaintiff that her initial 24-month benefits period would end on December 31, 2006 and that Aetna would be conducting an

---

[1] The Board initially entered into the Service Agreement with Broadspire Services, Inc. In 2006, Aetna acquired Broadspire's disability business and began providing administrative services to the Board under the terms of the Service Agreement with Broadspire.

evaluation of her status to determine if she was still disabled under the more stringent definition that applied after the 24-month period.[2] In a subsequent e-mail, Aetna asked plaintiff to supply the names and contact information for any physicians she had seen since April 2006. Exhibit 2-4 to Aetna's Motion. In response, plaintiff indicated she had seen her family physician, Dr. Earlene Posselt, and Dr. Kirti Kumar, a gastroenterologist. Id. Aetna requested plaintiff's medical records from the physicians and sent them each an Attending Physician's Statement to complete. Dr. Kumar indicated plaintiff had no restrictions or limitations on physical activities, nor did she have any physical or mental impairments. Exhibit 2-7 to Aetna's Motion. Dr. Posselt did not provide an Attending Physician's Statement to Aetna, but did provide plaintiff's medical records.

In February 2007, Aetna referred plaintiff's file to Ferdinand Urmaza, a medical care coordinator, to determine whether he could "identify any disability condition that would preclude Ms. Bailey from working." Exhibit 2-10 to Aetna's Motion at 1. Based on his review of the file, Mr. Urmaza concluded "[t]he medical data provided are insufficient to support functional impairment in any occupation." Id. at 2. He suggested that Aetna obtain a release to return to work from plaintiff's primary care physician "as no reason [was] provided that would totally disable the claimant." Id. On March 6, 2007, Aetna sent a letter to Dr. Posselt requesting she

---

[2]In accordance with the plan, plaintiff's benefits continued during the period of review, even after expiration of the 24-month period. Exhibit 2-3 to Aetna's Motion at 2.

provide a copy of all of plaintiff's chart notes and test results for the last two months. The letter also asked Dr. Posselt whether plaintiff had been released to return to work. Exhibit 2-11 to Aetna's Motion. Dr. Posselt responded that "[i]t was no known that she was <u>off</u> work!" Id. (emphasis in original). On May 7, 2007, Aetna advised plaintiff of Dr. Posselt's response and requested additional documentation of the impairments that prevented her "from working in any occupation as defined by the Disability Plan." Exhibit 2-13 to Aetna's Motion. Thereafter, Aetna received a letter from Dr. Posselt in which she stated that plaintiff

> has permanent hearing loss which will not improve. She is unable to be employed due to this limitation. Her hearing loss has been present since childhood and she has disability benefits from Social Security as well as the Board of Pensions, Presbyterian Church. Her hearing loss pre-existed her care here, and as such I have no records of hearing tests or diagnostic evaluations.

Exhibit 6 to Plaintiff's Response to Motion for Summary Judgment of Defendant Aetna Life Insurance Company with Brief in Support at 2 (Doc. No. 60). Plaintiff did not submit any additional documentation regarding her disability at this time.

In July 2007, Aetna referred plaintiff's medical file to Dennis Mazal, M.D. for review. Dr. Mazal concluded:

> Based upon the information reviewed and considered, including telephone consultation noted above, there is no support for a loss of functionality that would preclude the claimant from performing the duties of any occupation from 7/1/06 though the present date. Although the claimant does have a history of diabetes mellitus, the claimant's diabetes has been under reasonably good

5

> control of late and there is no documentation of any clinically significant target organ damage due to diabetes mellitus. The claimant's hypertension has been under reasonable control and there is no documentation of accelerated or malignant hypertension nor is there any documentation of recent or recurring hospitalization or emergency room visits due to hypertension out of control. . . . The member does have well-documented profound hearing loss uncorrectable with hearing aids and I am unable to comment on a loss of functionality due to hearing loss for any occupation as that is outside my field of specialty.

Exhibit 2-15 to Aetna's Motion at 2-3. Thereafter, Aetna sent plaintiff's file to Howard Kaplan, M.D., and ear, nose and throat specialist. Dr. Kaplan concluded that "[b]ased on the review of the provided documentation the restrictions and limitations outlined by the treating internist are not appropriate. Even with profound hearing loss the claimant would be capable of gainful employment." Exhibit 2-17 to Aetna's Motion at 2.

On November 12, 2007, Aetna informed plaintiff she no longer met the definition of disabled within the meaning of the plan. It noted that:

> Additional information received for review has been submitted and reviewed by two Aetna approved provider[s] specializing in Internal Medicine and ophthalmology.[3] There were no restriction[s] and limitations indicated on the medical documentation received to preclude you from performing any occupation. As you no longer meet the definition of disability as outlined in the terms of the Plan, your disability benefits will be terminated on 12/31/07.

---

[3]This statement is incorrect. Plaintiff's records were reviewed by an otolaryngologist, not an ophthalmologist.

6

Exhibit 2-18 to Aetna's Motion at 1. Plaintiff was informed of her right to appeal the determination within 180 days of receipt of the November 12, 2007 letter. Id. at 2.

Aetna's contract with the Board terminated as of April 1, 2008. On that date, defendant Liberty Life Insurance Company of Boston ("Liberty") assumed the duties as third-party administrator. On May 2, 2008, plaintiff filed her appeal of Aetna's decision to discontinue her disability benefits. She indicated that she would supply reports from Laurence Altshuler, M.D. and a vocational expert following her consultations with them. Exhibit 2-19 to Aetna's Motion. Liberty reviewed plaintiff's disability file, including the reports from Dr. Altshuler and plaintiff's vocational expert, and on October 15, 2008 notified her that it was "unable to alter the original determination to deny benefits beyond December 31, 2007." Exhibit 3 to Aetna's Motion at 1. It concluded:

> In summary, Drs. Mazal and Posselt indicate from an Internal Medicine perspective, Reverend Bailey has no impairment precluding her ability to work. Dr. Posselt, Dr. Kaplan, Dr. Altschuler (sic), and Dr. Grossman agree Reverend Bailey has profound hearing loss. Although Dr. Altschuler (sic) opines Reverend Bailey is permanently and totally disabled due to the hearing loss, Drs. Posselt, Kaplan, and Grossman indicate Reverend Bailey is able to work in an occupation where communication is performed in a face-to-face manner.
>
> Vocationally, although Mr. Huff [plaintiff's vocational expert] concludes Reverend Bailey is unable to work in any capacity, Dr. Del Vecchio, CRC, and Liberty Life's Board Certified Vocational Expert indicate Reverend Bailey has the capacity to work. Dr. Del Vecchio reported Reverend Bailey had conducted her own job search in

> 2005, and Mr. Huff reported Reverend Bailey had worked temporarily processing tax forms. Alternative occupations within Reverend Bailey's physical capacities and for which she is fitted, have been identified.

Id. at 5-6. Plaintiff appealed Liberty's decision to the Board, which, pursuant to the Service Agreement with Aetna, had the "final discretionary authority at the final appeal stage to determine what benefits shall be paid under the Plan, to interpret Plan provisions, and to otherwise determine the merits of any final appeal." Exhibit 2-2 to Aetna's Motion at 19. The Board denied plaintiff's appeal. Aetna did not participate in the review of plaintiff's appeals before either Liberty or the Board.

Plaintiff seeks damages from Aetna based on its alleged negligence in handling her claim. She claims Aetna failed to conduct a fair and reasonable investigation before it issued the decision to terminate her disability benefits. Aetna contends it is entitled to summary judgment on the negligence claim[4] because it owes no duty to plaintiff. In addition, Aetna argues that even if a duty was owed, there is no evidence to support a negligence claim against Aetna.

A prima facie case in

> all negligence claims, contains three elements: "(a) a duty owed by the defendant to protect the plaintiff from injury, (b) a failure to properly exercise or perform that duty and (c) plaintiff's injuries proximately caused by the defendant's failure to exercise his duty of care." A defendant whose conduct contributed to cause a plaintiff's

---

[4] Aetna also sought summary judgment on plaintiff's bad faith claim. That claim, however, was dismissed by plaintiff on March 23, 2010. Plaintiff's Stipulation of Dismissal of Breach of Contract and Bad Faith Asserted Against Defendants Liberty Life and Aetna Life (Doc. No. 78).

> injury is liable for the injury even if his conduct was not sufficient by itself to cause the injury. The cause of a plaintiff's injury is normally a question of fact for the jury to decide. Causation becomes a question of law only when there is no evidence and no reasonable inference from the evidence "from which the jury could reasonably find a causal link between the negligent act and the injury." Rephrased, the legal question is narrowly focused on whether a reasonable person could believe that the defendant's negligent conduct was a cause of the plaintiff's injury.

Robinson v. Oklahoma Nephrology Associates, Inc., 154 P.3d 1250, 1253-1254 (Okla. 2007) (citations omitted). The court finds it need not determine whether Aetna owed a duty to plaintiff because it is clear that plaintiff cannot establish either a breach of duty or that any breach by Aetna caused her loss of disability benefits. Contrary to plaintiff's assertions, there is no evidence that Aetna failed to properly investigate her disability claim. Indeed, Aetna took more than a year to conduct its review, during the course of which it consulted outside experts, all of whom concluded that plaintiff could not meet the plan's definition of disabled. Furthermore, it is undisputed that Aetna had no involvement in plaintiff's appeal of the initial decision to discontinue her benefits. It was thus not responsible for the ultimate decision to terminate her benefits. Likewise, while plaintiff claims that Aetna should have considered reports from Dr. Altshuler and Mr. Huff, it is undisputed that those reports did not exist until after Aetna's contract with the Board expired. The court finds as a matter of law that plaintiff has presented insufficient evidence to present

a jury question on her negligence claim against Aetna. Aetna is therefore entitled to summary judgment in its favor.

For the reasons set forth above, Defendant Aetna Life Insurance Company's Motion for Summary Judgment (Doc. No. 42) is GRANTED.

It is so ordered this 4th day of May, 2010.

*Tim Leonard*
TIM LEONARD
United States District Judge